UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER HADSELL,<br>Plaintiff,<br>v.<br>BARRY BASKIN, et al.,<br>Defendants. | Case No. 4:18-cv-00293-KAW<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 51-56, 58 |

Between April 19, 2018 and April 24, 2018, the defendants filed six separate motions to dismiss Plaintiff Christopher Hadsell's first amended complaint. (Dkt. Nos. 51-56 & 58.)

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS the motions to dismiss without leave to amend, because any amendment would be futile.

## I. BACKGROUND

Plaintiff Christopher Hadsell filed this lawsuit against Defendants Barry Baskin, Christopher Bowen, Kimberly Campbell, Tani Cantil-Sakauye, Contra Costa County, Garrett Dailey, Barbara Hinton, Garry Ichikawa, Catherine Isham, Barbara Jones, Mary Lindelof, Terri Mockler, Kathleen Murphy, Henry Needham, Jr., Anita Santos, Melinda Self, Mark Simons, G. Boyd Tarin, Charles Treat, Tracey Wapnick, Edward Weil, and William Whiting alleging various civil rights violations arising from his state court divorce proceedings. (*See* First Am. Compl., "FAC," Dkt. No. 45 ¶¶ 1-2.) Essentially, Plaintiff alleges that the judges, court staff, County employees, his ex-wife and her attorneys were conspiring to defraud him and violate his civil rights. *Id.*

The 22 defendants can be divided into four categories. Plaintiff is suing his ex-wife, Catherine Isham. (FAC ¶ 6(I).) Kimberly Campbell, Garrett Dailey, Tracey Wapnick, and William Whiting are attorneys who represented Ms. Isham during the divorce proceedings.[1] (FAC ¶¶ 6(C, F, V), 20, 39(D) n. 9.)

Mary Lindelof, Melinda Self, and G. Boyd Tarin participated in the state court proceedings in the scope of their employment with the Contra Costa County Department of Child Support Services ("DCSS"), so they, along with Contra Costa County, are named as defendants (hereinafter referred to as the "County Defendants"). (FAC ¶¶ 6(E, K, P, R).)

Barry Baskin, Christopher Bowen, Tani Cantil-Sakauye, Barbara Hinton, Garry Ichikawa, Barbara Jones, Terri Mockler, Kathleen Murphy, Henry Needham, Jr, Anita Santos, Mark Simons, Charles Treat, and Edward Weil are judicial officers serving on the bench of the Superior Court of California, the California Court of Appeal, or the California Supreme Court (hereinafter referred to as the "Judicial Defendants"). (FAC ¶¶ 6 (A, B, D, G, H, J, L-O, Q, S, and U).)

In summary, Plaintiff filed his petition for dissolution of marriage on February 8, 2011. (FAC ¶ 13.) The case was initially assigned to Judge Fannin. (FAC ¶ 14.) Ms. Isham also filed a petition for the dissolution of marriage, and the two cases were consolidated. (FAC ¶¶ 16, 18.) Ms. Isham filed a motion to requesting that Judge Fannin recuse herself, because her attorney, Mr. Whiting, had a conflict. (FAC ¶ 20.) Judge Fannin recused herself. (FAC ¶ 22.)

The case was reassigned to Judge Treat, and, on September 20, 2011, the court issued a temporary family support order. (FAC ¶¶ 32-34.) On December 6, 2011, the court held a one-day trial on the income imputation issue, and ruled that no income could be imputed to Hadsell, and that no change was to be made to the September 20, 2011 support order. (FAC ¶¶ 39 (A), (K).) Plaintiff contends that any modifications to the December 6, 2011 order are void, because no circumstance that allows for a modification has occurred and the time for appeal has expired. (FAC ¶ 41.)

---

[1] For the sake of simplicity, all references to Ms. Isham also concern the actions of her attorneys, as Plaintiff's allegations against Ms. Isham's counsel are based purely on their professional conduct in the course of their legal representation, which is privileged.

Thereafter, Judge Treat calendared a retrial of the income imputation issue, which occurred on October 24, 2012. (FAC ¶ 44.) Plaintiff alleges that Mr. Whiting defrauded the court by presenting exhibits and testimony regarding filled positions, which Plaintiff contends do not qualify as job opportunities for the purposes of income imputation. (FAC ¶ 47(B)(ii)(1).) On July 3, 2013, Judge Treat entered an order that increased Plaintiff's monthly family support payments from $766.00 to $7,375.00. (FAC ¶ 48(A)(i-ii).) Plaintiff contends that in the July 3, 2013 judgment, Judge Treat: (1) failed to make findings in the best interest of the children and minimize the disparities between the households; (2) improperly awarded Isham funds from Plaintiff's 401(k) account; (3) improperly construed "undisputed community property" as Isham's separate property; (4) improperly sanctioned Plaintiff. (FAC ¶¶ 48, 63, 68, 81-82, 87- 88.) Plaintiff further contends that he was treated differently than similarly situated people because he has been unable to find cases in which persons in his situation were treated as he was. (*See* FAC ¶ 49.) The first, second, third, fourth, and fifth causes of action allege that the July 3, 2013 order violates the U.S. Constitution, as well as applicable federal and state laws.

Plaintiff appealed the July 3, 2013 judgment to the Court of Appeal for the State of California, First Appellate District. (FAC ¶¶ 93-94.) On March 13, 2015, the Court of Appeal panel—Justices Jones, Needham, and Simons—issued its ruling, affirming the July 3, 2013 judgment in all relevant aspects. (*See* FAC ¶ 94(D).) Plaintiff then filed a petition for review with the Supreme Court for the State of California, which denied the petition. (FAC ¶ 95(D)(ii).) The sixth cause of action is against the court of appeal for its failure to provide a "meaningful review" of the July 3, 2013 judgment in violation of California law, which Plaintiff alleges is also a violation of the U.S. Constitution.

On July 9, 2013, Ms. Isham filed a writ of execution, attempting to collect arrearages from the income imputed to Plaintiff in accordance with the July 3, 2013 judgment. (FAC ¶ 101.) On July 15, 2013, Plaintiff filed a claim of exemption, and on July 25, 2013, Ms. Isham filed an opposition to Plaintiff s claim. (FAC ¶¶ 103-106.) The matter was set for hearing on August 16, 2013. (FAC ¶ 108.) Isham filed a supplemental brief the night before the hearing and asked for a continuance. (FAC ¶¶ 108(E), (N).) The hearing was continued, and Judge Hinton awarded funds

to Ms. Isham as a result of the writ of execution as part of a judgment entered on October 15, 2013. (FAC ¶¶ 108(O), 108(U)(ii).) The seventh cause of action seeks to bar Ms. Isham from any efforts to enforce the July 3, 2013 judgment on the grounds that the judgment is invalid. (FAC ¶¶ 100-113.)

Following Ms. Isham's efforts to enforce the July 3, 2013 judgment, Plaintiff alleges that the Contra Costa County Department of Child Support Services ("DCSS"): (1) garnished or levied his financial accounts to collect the unpaid amounts of the court-ordered family support payments, (2) reported to credit bureaus that plaintiff did not make the court-ordered family support payments, (3) informed the California DMV that Plaintiff did not make the court-ordered family support payments, and (4) informed the California State Bar that Plaintiff did not make the court-ordered family support payments. (FAC ¶¶ 121, 149.) On December 12, 2013, the State Bar of California issued a notice to Plaintiff, wherein he was advised that DCSS identified him as "a person who is in arrears in court ordered child or family support obligations." (FAC, Ex. 1.)

Plaintiff further alleges that the individually-named DCSS employees— Lindelof, Self and Tarin — "acted in concert . . . in implementing DCSS' . . . collections efforts" with respect to the court-ordered judgment requiring Plaintiff to make family support payments. (FAC ¶ 162(A)(ii).) Specifically, Plaintiff alleges that Lindelof stated in open court on January 8, 2014 that DCSS was going to collect the court-ordered family support payments from Plaintiff, contacted Charles Schwab in 2014 to request that Plaintiff's funds be released to satisfy the family support judgment, and opposed Plaintiff's request that his California driver's license be renewed. (FAC ¶¶ 121, 160.) Regarding Self, the Plaintiff alleges that she directly supervised Lindelof and Tarin, and that she "acted in concert with . . . Lindelof . . . [and] Tarin." (FAC ¶ 153.) Regarding Tarin, Plaintiff alleges that he "acted in concert with . . . Lindelof . . . [and] Self." (FAC ¶ 162(F).) On January 8, 2014, Plaintiff alleges a hearing took place before then-Commissioner Santos, which appears to be related to collection efforts by the DCSS. (FAC ¶ 121(A).) Plaintiff references a rehearing on the same issues before Judge Mockler on July 25, 2016. (FAC ¶ 124.) The eighth and tenth causes of action allege that DCSS' attempts to garnish and levy his accounts are constitutional violations because the underlying judgment is invalid.

On February 18, 2014, Plaintiff filed a motion to dismiss "Case 775." (FAC ¶ 142.) Following a hearing on July 21, 2014, Judge Hinton denied the motion. (FAC ¶¶ 144(A)-(G).) The ninth cause of action is premised on Judge Hinton's refusal to dismiss Case 775.

The eleventh cause of action alleges that Ms. Isham's motion to change custody violates the law. On December 4, 2015, Ms. Isham filed an Ex Parte Application for an Order Shortening Time/Temporary Emergency Court Order to enforce the July 3, 2013 judgment. (FAC ¶ 165.) Plaintiff filed a motion objecting to Judge Weil for cause on December 17, 2015. (FAC ¶ 166.) Judge Weil issued temporary child custody orders based upon Ms. Isham's ex parte application. (FAC ¶¶ 169(A)-(F).) At a hearing on December 21, 2015, Judge Weil attempted to locate another judge to conduct the hearing. (FAC ¶ 170(A)(v)(4).) Judge Weil left the courtroom, and the clerk informed the parties that the hearing would take place at 1:30 p.m. before Judge Baskin. (FAC ¶¶ 170(A)(vi)-(vii).) Plaintiff was unable to attend the afternoon hearing. (FAC ¶ 171(A).) Judge Baskin issued the temporary child custody orders. (*See* FAC ¶ 171(C)(i). Plaintiff contends that Ms. Isham abandoned her December 4, 2015 Emergency Custody Order when she filed a new Temporary Emergency Order on February 3, 2016. (FAC ¶¶ 173(A),(B).) The matter was for set for hearing before Judge Mockler on February 17, 2016. (FAC ¶ 173(C).) Plaintiff contends that the motion was continued several times to July 25, 2016. (FAC ¶ 173(L)(i).)

Plaintiff filed a motion objecting to Judge Mockler on February 8, 2016. (FAC ¶ 178.) On April 22, 2016, Judge Ichikawa, a judge for the Superior Court of California, County of Solano, denied Plaintiff s challenge to Judge Mockler. (*See* FAC ¶ 179.)

On April 28, 2016, Judge Mockler presided over a hearing, which led to a judgment dated June 13, 2016. (FAC ¶¶ 182 (A)-(B).) At the April 28, 2016 hearing, Judge Mocker ruled that Plaintiff was a vexatious litigant who was required to post a bond prior to filing motions, denied Plaintiff's motion for summary judgment, and denied Plaintiff's motion to set aside and vacate the March 2, 2016 judgment. *See ids.* The twelfth cause of action challenges the validity of the June 13, 2016 judgment.

On July 1, 2016, Judge Mockler held a hearing on three matters: (1) Plaintiff's Motion for Simplified Modification of Order for Child and Spousal Support; (2) Plaintiff's Notice of

5

Objections (Family Code § 4251); and (3) Plaintiff's Request for Order to void three findings and orders filed February 5, 2016, February 29, 2016, and February 22, 2016. (FAC ¶¶188(A)-(B).) The hearing resulted in a September 20, 2016 judgment. (FAC ¶ 191(B).) Plaintiff also alleges that Judge Mockler entered a judgment (or other order) on September 8, 2016, the underlying facts of which are impossible to discern from the face of the complaint. (FAC ¶¶ 201-212.) The thirteenth and fourteenth causes of action challenge the validity of the September 8, 2016 and September 20, 2016 judgments.

The fifteenth cause of action is against the court of appeal and Chief Justice Cantil-Sakauye for failing to provide a "meaningful review" of the judgments entered on June 13, 2016, September 8, 2016, and September 20, 2016, including the finding that he was a vexatious litigant. (FAC ¶¶ 214, 216-18.) Plaintiff filed appeals of the three judgments. (FAC ¶ 214.) Counsel for Ms. Isham filed motions to dismiss on November 23, 2016, after which the Court of Appeal dismissed the appeal on January 26, 2017. (FAC ¶¶ 215, 217(D).) Ultimately, Plaintiff petitioned for review with the California Supreme Court, which was also denied. (FAC ¶¶ 218(D)-(E).)

On January 12, 2018, Plaintiff filed this lawsuit. In response to the motions to dismiss the original complaint, Plaintiff filed the first amended complaint on April 6, 2018, and the undersigned terminated the pending motions. The first amended complaint, including exhibits, consists of 338 pages and alleges fifteen causes of action against the various defendants.

On April 19, 2018, the County Defendants filed a motion to dismiss. (County Defs.' Mot., Dkt. No. 51.) On April 26, 2018, Plaintiff filed an opposition. (Pl.'s County Defs. Opp'n, Dkt. No. 60.) On May 10, 2018, the County Defendants filed a reply. (County Defs.' Reply, Dkt. No. 71.)

On April 20, 2018, the Judicial Defendants filed a motion to dismiss. (Judicial Defs.' Mot., Dkt. No. 53.) On April 30, 2018, Plaintiff filed an opposition. (Pl.'s Judicial Defs. Opp'n, Dkt. No. 60.) On May 8, 2018, the Judicial Defendants filed a reply. (Judicial Defs.' Reply, Dkt. No. 68.)

On April 20, 2018, Tracey Wapnick filed a motion to dismiss. (Wapnick Mot., Dkt. No. 54.) On May 2, 2018, Plaintiff filed an opposition. (Pl.'s Wapnick Opp'n, Dkt. No. 62.) On May

1   9, 2018, Ms. Wapnick filed a reply. (Wapnick Reply, Dkt. No. 71.)

2   On April 20, 2018, Kimberly Campbell and William Whiting filed a motion to dismiss. (C&W Mot., Dkt. No. 55.) On May 3, 2018, Plaintiff filed an opposition. (Pl.'s C&W Opp'n, Dkt. No. 64.) On May 11, 2018, Ms. Campbell and Mr. Whiting filed a reply. (C&W Reply, Dkt. No. 72.)

On April 20, 2018, Garrett Dailey filed a motion to dismiss. (Dailey Mot., Dkt. No. 56.) On May 4, 2018, Plaintiff filed an opposition. (Pl.'s Dailey Opp'n, Dkt. No. 65.) On May 11, 2018, Mr. Dailey filed a reply. (Dailey Reply, Dkt. No. 74.)

On April 24, 2018, Catherine Isham filed a motion to dismiss. (Isham Mot., Dkt. No. 58.) On May 5, 2018, Plaintiff filed an opposition. (Pl.'s Isham Opp'n, Dkt. No. 66.) Ms. Isham did not file a reply.

Plaintiff and all named defendants have appeared and consented to the jurisdiction of the undersigned magistrate judge to conduct all further proceedings in this case, including trial and the entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 10, 16, 17, 19, 23-25.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by

the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

## III. DISCUSSION

In each of the six motions to dismiss, the defendants argue that the instant lawsuit is barred by the *Rooker-Feldman* doctrine. (County Defs.' Mot. at 4; C&W Mot. at 6; Dailey Mot. at 5; Isham Mot. at 5; Judicial Defs.' Mot. at 9; Wapnick Mot. at 9.)

The *Rooker-Feldman*[2] doctrine deprives the federal courts of jurisdiction to hear direct appeals from the judgments of state courts. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). The purpose of the doctrine is to "protect state judgments from collateral federal attack." *Doe & Assoc. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001). The *Rooker-Feldman* doctrine applies not only to final state court orders and judgments, but to interlocutory orders and non-final judgments issued by a state court as well. *Id.*; *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n. 3 (9th Cir. 1986).

The *Rooker–Feldman* doctrine "bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal," but also "the de facto equivalent of such an appeal." *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). To determine whether an action functions as a de facto appeal, we "pay close attention to the relief sought by the federal court plaintiff." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (internal quotation marks and citation omitted). An action functions as a forbidden de facto appeal when the plaintiff is: "[1] assert[ing] as his injury legal errors by the state court and [2] see[king] as his remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (citing *Noel*, 341 F.3d at 1163).

Here, Plaintiff's operative complaint is premised on the allegation that the trial court in the underlying action wrongfully entered judgments modifying Plaintiff's child support and spousal support payments, and ordering distribution of marital and separate property. Plaintiff, having

---

[2] The *Rooker-Feldman* doctrine derives its name from two United States Supreme Court cases: *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923).

8

lost[3] in state court on these issues, alleges that he has suffered injury as a result of the later judgments, because he has incurred additional child support and spousal support obligations and lost funds due to the state court's characterization of certain martial and separate property. Indeed, Plaintiff seeks to a finding that all state court judgments entered after December 6, 2011 are invalid. Since Plaintiff alleges, as his legal injury, erroneous decisions by the state court, and seeks relief from those judgments, the federal action raises a de facto appeal.

In opposition,[4] Plaintiff argues that the *Rooker-Feldman* doctrine does not apply, because it "does not ask this Court to review any final state-court judgments. Instead, it ask this Court to enforce final state-court judgments in accordance with *Exxon Mobil Corp. v. Saudi Basic Industries Corp.* (2005) 544 U.S. 280." (*See* Pl.'s Judicial Defs.' Opp'n at 6.) *Exxon*, however, is inapposite, because it involved parallel state and federal litigation. *Exxon,* 544 U.S. at 292. ("When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court.") Here, there are no parallel proceedings, as the instant case was filed after the judgments were entered in the state court proceeding. As a result, this is the very type of case described by the *Exxon* court as being subject to the *Rooker-Feldman* doctrine, as it was "brought by [a] state-court loser[] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. Thus, to the extent that Plaintiff argues that *Exxon* supersedes *Rooker-Feldman*, or otherwise assists him here, he is mistaken.

Plaintiff further argues that he is asking the federal court to enforce the December 6, 2011 judgment that was favorable to him and to void the other state court judgments that he contends were entered without subject matter jurisdiction. (*See* Pl.'s Judicial Defs.' Opp'n at 13.) This argument is unavailing. There is no way to view this case other than as a de facto appeal, because

---

[3] Despite Plaintiff's arguments to the contrary, the judgments entered after December 6, 2011 were unfavorable to him, thereby making him a "loser" for the purposes of *Rooker-Feldman.* (*See* Pl.'s Judicial Defs. Opp'n at 22 (characterizes himself as having won prior judgments).)

[4] Plaintiff makes the same arguments regarding *Rooker-Feldman* in all of his oppositions. (*See* Pl.'s County Defs. Opp'n at 13-17; Pl.'s C&W Opp'n at 18-22; Pl.'s Dailey Opp'n at 18-21; Pl.'s Isham Opp'n at 16-17; Pl.'s Judicial Defs. Opp'n at 19-24; Pl.'s Wapnick Opp'n at 17-20.) Thus, for the sake of simplicity, the undersigned will cite only to his opposition to the Judicial Defendants' motion to dismiss.

his seeking to void later judgments is tantamount to seeking relief from same.

Additionally, to the extent that Plaintiff's allegations seek any examination of the alleged misconduct, including that by the judicial officers in exercising subject matter jurisdiction, this would require the district court to review the state court decision, which it is unable to do. *See Worldwide Church of God v. McNair*, 805 F.2d 888, 892-93 (9th Cir. 1986) (The district court cannot evaluate a plaintiff's alleged constitutional claims without conducting a review of the state court's legal determinations, and it lacks subject matter jurisdiction for the latter.). Indeed, Plaintiff's only recourse was to file appeals with the California Court of Appeal, which he appears to have done and lost. Plaintiff's only opportunity to appeal to a federal court would have been to appeal to the United States Supreme Court, which he apparently did not do.

Lastly, to the extent that Plaintiff argues that *Rooker-Feldman* is unconstitutional, the doctrine remains the law of the land, and the undersigned is obligated to follow it. (*See* Pl.'s Judicial Defs.' Opp'n at 23.)

Accordingly, the *Rooker-Feldman* doctrine divests the district court of subject matter jurisdiction, which requires the undersigned to grant the motions to dismiss without leave to amend, as any amendment would be futile. As such, the Court need not address the alternate grounds on which the defendants have separately moved to dismiss the operative complaint.

## IV. CONCLUSION

In light of the foregoing, Defendants' six motions to dismiss are GRANTED without leave to amend, because the district court does not have subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

The Clerk shall close the case.

IT IS SO ORDERED.

Dated: July 3, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge